ered judgment against them. C. and D. paid the amount of the debt, and took an assignment of the judgment against S.

The Court of Errors held that C. and D. stood in the place of L., and might avail themselves of the judgment to recover the money paid by them, of S.'s estate, (by virtue of the lien of the judgment.) A surety who pays a debt for his principal, is entitled to be put in the place of the creditor, and to all the means which the creditor possessed, to enforce payment against the principal debtor.

Decree *reversed*, 11 to 8.

## TENANCY IN COMMON.

CUYLER *v.* BRADT, 2 C. C. E., 326.

*Tenancy in Common; Notice to Vendee of Vendor's Title, by Recital of the Intent of the Purchase in deeds among the joint-purchasers.*

APPEAL from decree of the chancellor. The main question in this case, was whether the estate of several patentees who had agreed to purchase jointly, and to bear in equal proportions the expense of obtaining a patent, which was to them *jointly*, was an estate in joint tenancy or in common.

The Chancellor held that the patentees took as joint tenants and not as tenants in common.

But the Court of Errors on appeal held, that it appearing by the recital of *deeds among themselves*, that they intended to purchase in common, each to have an *interest* in proportion to his share of joint contribution, they took not as joint-tenants, but as tenants in common.

And they also held that a *purchaser* who took a conveyance from the survivors of the patentees with knowledge of the recitals in those deeds among the patentees themselves, was a purchaser with notice of the title of the patentee who had died, to his share of the patent; although if, without

such notice, he had purchased for a valuable consideration, the conveyance would have transferred the legal title to him.

It was held, accordingly, that the grantee in this case took subject to trusts implied as well as expressed, and the Chancellor's decree was accordingly reversed.

---

☞ In *Coles* v. *Coles*, 15 J. R. 159, it was held by the Supreme Court that where real estate is held by partners for the purpose of the partnership, they hold not as partners but as tenants in common ; and the rules relative to partnership property do not apply to it ; that one partner can only sell his individual interest ; and when both join in the sale and conveyance and one only receives the purchase money, the other may maintain an action against him for his proportion.

In *Baker* v. *Wheeler*, 8 Wend. 505, where two tenants in common were partners in the lumber business, and cut timber on the lands held in common to carry on their business, and *one* of them gave a license to a third person to cut timber on the same land, it was held good and that it conferred title to the timber cut by him especially where the license was in satisfaction of a demand due from both tenants in common.

In *Smith and another*, assignees of *M'Jimsey* v. *Jackson*, 2 Edw. Ch. Rep. 28, the Vice Chancellor of the first circuit held that where partners buy real estate with joint funds for partnership purposes, there is no right of survivorship in the lands. Upon the death of one partner intestate, his share descends to his heir. The Vice Chancellor even holds that equity cannot interfere to alter its character, except upon the ground of an *agreement*." He says :

" There are instances, however, of lands held for partnership purposes, which will be considered in equity as personal property, and be converted and applied accordingly. On this subject in the EnglishChancery there has been a diversity of opinion. Lord Thurlow held, in *Thornton* v. *Dixon*, 3 Bro. C. C. 199, (contrary to his first impression) that in order to warrant a conversion of the real estate which had been purchased and held for the purposes of the partnership, into personalty, upon the death of one of the partners, there should be an express agreement for the sale and change of the property ; otherwise, upon the dissolution, the property

of the partnership would result, according to its nature—the real as real, and the personal as personal estate. Upon the authority of this case, Sir Wm. Grant decided in the cases of *Bell* v. *Phyn*, 7 Ves. 453, and *Balmain* v. *Shore*, 9 Id. 500, in favor of the representatives of the real estate; he being of opinion with Lord Thurlow, that the circumstance of purchasing real estate with partnership funds, and for the business of the partnership did not alter its nature or prevent its descent to the heir at law."

"Lord Eldon is reported to have entertained different views on the subject; and, by his decisions in *Ripley* v. *Waterworth*, 7 Ves. 425, and *Townsend* v. *Devaynes*, reported in 1 *Montagu on Part.*, app. 97, especially by the last case, he appears to have decided that the freehold of premises, purchased by partners for the purpose of carrying on the business in which they were engaged, was on dissolution, by death or otherwise, to be considered as personal estate. These were cases in which the question arose between the representatives of the real and the personal estate, and wherein the rights of creditors were not immediately involved."

The Vice-Chancellor further held that there was nothing in the case of *Coles* v. *Coles*, (*ante*,) to prevent the Court of Chancery from giving effect to any express agreement which may be found to exist between partners, concerning their purchases of real estate, and that it was competent for them to change the character of such property. "But if a purchase be made and a conveyance taken to partners as tenants in common, without any agreement to consider it as stock, although it be paid for out of their joint fund, and to be used for partnership purposes, I am of opinion it must still be deemed real estate. The law will certainly so regard it; and equity cannot interfere to alter its character, except upon the ground of an agreement." He cites in support of this principle, *M'Dermot* v. *Lawrence*, 7 Serg. & R. 438; *Goodwin* v. *Richardson*, 11 Mass. R. 469; *Ford* v. *Heron*, 4 Munf. 316; *Delossey* v. *Hutchinson*, 2 Rand. R. 183, and *Greene* v. *Greene*, 1 Ham. Rep. 244, (Ohio.)

In the case before him, where the partners bought in a house and lot upon a mortgage sale, to secure a debt due to their firm; and other real estate upon speculation, paying for it out of partnership funds, and debiting it to merchandize accounts, and also took up money upon mortgage of the property, which was put into the same account, and the parties having failed, and the surviving partner assigned all his interest in the real estate for the benefit of the partnership creditors,

The Vice Chancellor held, that the real estate was to be

considered as partnership property; and the proceeds of it, liable to partnership debts and purposes; also, that they were first to be applied to that use, before any part could be claimed by the administrator of the deceased partner, for the benefit of his separate creditors, or next of kin. The balance would belong to the heir at law.

He also held that the widow of the deceased partner was entitled to a right of dower in her husband's share, but having joined with her husband in the mortgages which were foreclosed, she had only a right of dower in the equity of redemption, which attached to the balance in court. That right of dower he held, might be estimated upon the principle of a life annuity; and a gross sum could be paid over to her, or one third of the moiety of the fund, might be invested for her use, at her election. pp. 35, 36.

Upon this point of the claim of dower, the Vice Chancellor admits that " his conclusion may not seem to be reconcilable with the decision in the Ohio case of *Greene* v. *Greene,* where the court proceeded mainly upon the effect of the special agreement in the articles of partnership, and as to its effect in preventing any right of dower attaching to the land. If that decision can be supported upon principle, I apprehend it can only be done through the particular circumstances of the case. It is sufficient to say the facts in the present suit are different."

Now, the case of *Greene* v. *Greene and al.,* (1 Hammond's Ohio Rep. 244,) does certainly differ in one leading, if not controlling fact, from the case of *Smith* v. *Jackson.* That fact is, that the real estate in the former, was purchased as the report states : " as a site for their establishment as brass and iron founders, and buildings were erected, which were used and occupied exclusively for the purposes of the partnership, and were necessary for that use, and constituted a large portion of the capital invested." This feature is wholly wanting in the case of *Smith* v. *Jackson,* unless the buying in by the partners there, of one of the houses and lots to secure a debt due their firm, can be tortured into a purchase of premises for partnership purposes. As to the rest of their purchases, which were as it is expressed, " upon speculation ;" there can be no pretence for saying that they were for purposes of the partnership trade. But in the case of *Townsend* v. *Devaynes* before Lord Eldon, which seems to be especially relied on by the Vice Chancellor, the real

estate, "paper mills and premises," are expressly stated to have been purchased for the use of the partnership business in which the testator was engaged. There was no question there, as to the rights of partnership creditors, and though it is now a case of undoubted authority, it is difficult to discover how it has any application to the point decided by the V. C. in *Smith* v. *Jackson*, as to the lien of partnership creditors upon the proceeds in equity, of property not bought or used for any purpose of the partnership trade. (See note to 11 Simon's Rep. 498, where the case is fully stated.) The case of *Ripley* v. *Waterworth*, 7 Ves. 425, also decided by Lord Eldon, is of the same description. The property there was held and used for the purposes of the partnership trade.

But in the case of *Bell* v. *Phyn*, 7 Ves. 453, the property though bought with partnership funds, was not bought for the purpose of the partnership. It is true that the master of the rolls says that "even if it could be considered in a proper sense, partnership property, upon the authority of the case before Lord Thurlow, (*Thornton* v. *Dixon*, 3 Bro. C. C. 199,) I am obliged to decide for the heir." In all the cases where the English courts have held that real estate purchased with partnership funds, was to be considered as partnership property, it has been not only purchased, but used solely for the use of the trade, or held converted by express agreement. In the case of *Cookson* v. *Cookson*, 8 Sim. 543, the Vice Chancellor, Sir Launcelot Shadwell, expressly sanctions this view. He there said, (p. 547,) "But what strikes me as the law applicable to the case is this, namely—that law which Sir William Grant laid down in *Bell* v. *Phyn*. Suppose this was partnership property, I doubt whether there was a conversion. There was no occasion to call for it for any of the purposes of the partnership. It remains clear. Each might have entered into the enjoyment of his share. Then suppose all die, why is it to be considered personal property—something different from what it really is, as between the real and personal representatives?" So it appears to me in this case; when the partnership terminated, it is not suggested that there was any necessity for a sale of a particle of the assets for the purpose of paying the

60

partnership debts. The consequence therefore is, that freehold property will remain freehold in the different parties." 8 Sim. 543.

The case of *Greene* v. *Greene*, being a case, therefore, of the sort, where the English courts have held real property converted to personal, even without any express agreement that it should be considered as part of the partnership property if it was purchased with partnership funds and used for the purposes of the partnership trade, the claim of dower could not be sustained, until the debts of the partnership were first paid. The idea of the Vice Chancellor, then, in *Smith* v. *Jackson*, that the court, in *Greene* v. *Greene*, proceeded mainly upon the special agreement in the articles of partnership, does not seem warranted by the facts in the case. There was no need of any special agreement to constitute it partnership property, if it was bought and used for partnership purposes. Nor is it easy to perceive, even if they did rely mainly on the special agreement, how that alone would distinguish it from the case of *Smith* v. *Jackson*, if the Vice Chancellor was right there in his conclusion, that there was " sufficient evidence from the entries in the partnership books, and from other circumstances, that the partners must have understood and intended the purchases to have been held as partnership property." (p. 35.) These understandings and intentions of the parties, he holds to be sufficient to determine the character of the property ; and that being once determined, his decision in favor of the right of dower in the partnership property, seems not only irreconcilable with the principle of the decision in *Greene* v. *Greene*, but equally hostile to the principle of his own decision in *Smith* v. *Jackson*. If the character of partnership property rightly attached to it, he takes it for granted, that it is liable for the partnership debts, in the first instance; though, if merely bought with partnership funds, without anything further, it may be doubtful whether any such preference is either upon principle or authority sufficiently established. But being held liable in this case, upon sufficient evidence of the intent of the parties, for the partnership debts, it must surely remain so, not only as to the administrator and next of kin of the deceased partner, but as to the dower also, until those

debts are satisfied. Both parts of this decision can not stand together, upon the Vice Chancellor's own principles, without the aid of some clearer distinction than that he suggests with regard to the ground on which the court in *Greene* v. *Greene*, mainly proceeded.

The general question, as to the character of real estate purchased by two partners with the funds and for the business of the partnership, where one of them died leaving the firm without personal property sufficient to pay its debts, came up in the case of *Delmonico* v. *Guillaume*, before Assistant V. C. Sandford, 2 Sandf. R. 366. He there held that such real estate was in equity to be treated as personal property; and that the surviving partner had an absolute right to dispose of it as such for the payment of the partnership debts. Upon this ground, without even the personal representative of the deceased partner having been made a party to the bill and without, of course, any regular or binding account of the debts and assets of the firm, he decreed that the surviving partner had full right to sell the real estate and compelled the purchaser of the property, who objected to the title, on a bill for a specific performance by the surviving partner, to complete his purchase. The widow and infant heir of the deceased partner were made parties defendant along with the purchaser; but the personal estate was not represented, as expressly appears from the decision of the Vice-Chancellor. The guardian *ad litem* of the infant heir was ordered to join in the conveyance in the name of the infant.

The Assistant Vice Chancellor, in the course of his brief opinion, observes:

" The case of *Coles* v. *Coles*, 15 J. R. 159 was at law. In *Smith* v. *Jackson*, the Vice Chancellor concurred in the doctrine of the cases before cited, to its extent as applicable to creditors." ( *Qu.* as to the right of dower ?) " Indeed, the cases of *Phillips* v. *Phillips*, 1 Mylne & Keen, 649, and *Broom* v. *Broom*, 3 Id. 443, go so far as to hold that this farm would be deemed personalty as between the real and personal representatives. If that doctrine were applied here, the personal representative would be a necessary party to this suit. I will not express an opinion upon the point adjudged in those cases." 2 Sand. R. 368.

This language of V. Ch. Sandford would seem to intimate a doubt whether he would go so far as to hold, with Sir John Leach, the master of the rolls, in *Phillips* v. *Phillips*, and *Broom* v. *Broom*, that this farm was to be deemed personalty as between the real and personal representative, in case of *intestacy*, as was the case before that court. Whether such real estate may not pass under a devise or bequest of all the testator's *stock in trade*, is a different question. But if the Vice Chancellor was right in considering it as *personal* as well as partnership property, to be devoted to the uses of the partnership in the payment of debts, and so he expressly says: (p. 367,) it is not easy to see how the making of the personal representative a party to the suit can, upon principle, be dispensed with. In the case of *Broom* v. *Broom*, the personal representative of the deceased partner filed the bill against the infant heir and the assignees of the surviving partner who had become bankrupt, to have the sale made to the latter confirmed, and to have it declared that the share of the infant heir became personal assets to be administered by the administratrix. All parties were then before the court: the *administratrix* there had sold the share of her deceased husband before the bankruptcy, but the purchase money was not paid. So far, therefore, as the case of *Broom* v. *Broom* goes, it not only goes to show that the personal representative was a necessary party to the suit, but had also in equity the sole right of disposing of the property. It was not in that case necessary, for the payment of partnership debts, it is true, that the property should be disposed of; but if it had been, surely it is the business and peculiar duty of the personal representative to see that such is the case, and to take care that nothing of the estate which ought to go to the individual creditors or next of kin, is misapplied to the payment of partnership debts, when there might be sufficient assets without the sale of the real estate. But granting that there was not enough of the partnership assets to pay its debts, yet if there was more than enough of the individual personal assets of the deceased partner, is not the personal representative of the deceased partner entitled to elect whether that share of the debt shall be paid out of the one fund or the other; or, in other words, to *redeem* the pro-

perty from the lien of the partnership debts? Or suppose, the heir at law being of full age, had elected to consider it real estate and most for his benefit to pay his ancestor's share of the debts of the partnership; he being also the only next of kin and entitled to the whole surplus, can there be a doubt that he might compel the personal representatives to redeem the land? And would it not then be, in the hands of the heir, real estate to every possible intent? or must it remain personal estate forever? In every point of view, therefore, it would seem that the personal representative of the deceased partner, if the right of selling did not belong to him, was a necessary party to this suit. The dissolution of the partnership by the death of a copartner, vested the actual legal as well as equitable interest in him, subject to the payment of the partnership debts; and when the aid of a Court of Chancery was invoked to make a perfect title to a purchaser of that interest, through a sale made by the surviving partner, the court should have had all parties before it who could claim it either as real or personal. The V. C. says indeed that "The surviving partner will be required to account for this property as a part of the assets of the copartnership:" but account to whom? If to the personal representative of the deceased partner, that alone proves that he ought to have been a party. In short, it would seem that the proper frame of the complainant's bill in this case would have been a bill against the personal representative as well as the heir at law for a sale, of the property to pay the partnership debts: upon an account taken of its assets and liabilities; or to pay their proportion of the debts out of other assets of the testator. Of his right to sell at all the share of his partner, and to enforce such a sale against the heir at law and the purchaser, by a bill for specific performance, we must be pardoned for entertaining doubts until further adjudications shall dispel them.

The case of *Phillips* v. *Phillips* goes to the extremest verge of the doctrine of transforming real estate held by partners into personalty, and is, in a great degree contradicted, as to the character of it, where it is a question between the real and personal representative, by the later and better considered decision of Sir William Grant, in *Cookson* v. *Cookson*, 8 Sim. R. 543, before cited. He held that "all the

debts of the partnership being paid, the share of the deceased partner in such real estate, retained its original character and descended to the heir." And when the partnership purposes are served, as personalty, why should it not result to its real character? Why, as Sir William Grant there asks, should it be considered as something different from what it really is, as between the real and personal representatives?

The case of *Houghton* v. *Houghton*, 11 Simon, 491, is not in conflict with these principles. The Vice Chancellor Sir L. Shadwell, there expressly says that that case was not decided upon that of *Phillips* v. *Phillips*, though the marginal note would make it appear so. He says: "Now I confess that I do not think that this case stands on the proposition which was stated so very plainly and broadly by Sir John Leach in the case of *Phillips* v. *Phillips*; but the question before me is this; whether I have not sufficient evidence of the dealing between *James* and *John* with regard to this real estate (in which, as real estate, *James* then had the sole interest) to show that *James* consented, as regarded John, that it should be treated as partnership property; and my opinion is that the evidence does amount to that." In addition to this consent, the property had also been purchased with partnership funds, and used for partnership purposes.

Chancellor Kent in the note (c) 3 Kent's Com. 39, thus lays down the rule as settled in England; "The general principle now declared in the English law is, that real estate acquired for the purposes of a trading concern, is to be considered as partnership property, and to be first applied in satisfaction of the demands of the partnership." He even states the doctrine in *Phillips* v. *Phillips* without qualification. But he dissents from the decision in *Smith* v. *Jackson* on both points, quite as strongly as we have ventured to do on the mere point of dower. He says: "The Vice Chancellor in New York in *Smith* v. *Jackson*, 2 Sd. R. 28, reviews all the conflicting cases on this point; and he follows the Supreme Court of New York and holds, that though real estate be purchased with partnership funds for *partnership purposes,** there is no survivorship as to the real estate, and the

---

* *Quære?* If the property there was purchased within the proper meaning of the terms—for partnership purposes ?

share of a deceased partner as a tenant in common descends to his heirs, unless there be an agreement among the partners, that the lands so purchased shall be considered as personal property; and that there, upon the foot of that agreement and not without it, equity would apply the lands to pay partnership debts. Nay, he gives the wife her dower in the partnership share so descended. The decisions on this side of the question, appear to me to be a sacrifice of a principle of policy, and above all, a principle of justice, to a technical rule of doubtful authority." (This note of Ch. Kent contains a summary notice of cases on the appropriation of partnership lands to partnership debts, in preference to others, in several states of the Union, and he says: ";The prevalence and correctness of the preference appear to be incontestable."

In fine, upon principle and the better authorities, it may be doubted whether the proposition laid down by Sir Wm. Grant in *Cookson* v. *Cookson*, upon this point is not carrying the doctrine of considering real estate of a partnership, personal assets, as far as it can properly be so considered. By express agreement, or even acts of the parties, lands bought by the partnership though not for strict partnership purposes, may be made partnership assets; and land, bought with their joint funds, for the purposes of their trade, become assets of the firm, without any such agreement. But when those purposes have ceased, by the termination of the firm; upon the liquidation and payment of its debts, out of other assets, what rule of justice, of equity, or of policy can there be, that hinders the real estate from resuming its true character, with all the legal incidents?